Mel C. Orchard, III
Tyson E. Logan
THE SPENCE LAW FIRM, LLC
PO BOX 548
15 S. Jackson St.
Jackson, WY 83001
307-733-7290 (p)
307-733-5248 (f)
orchard@spencelawyers.com
logan@spencelawyers.com

ATTORNEYS FOR PLAINTIFF

FILED

MAY 0 8 2014

JANET K. MONTGOMERY
CLERK OF DISTRICT COURT
PINEDALE, WYOMING
BY

IN THE DISTRICT COURT, NINTH JUDICIAL DISTRICT OF THE

STATE OF WYOMING, SUBLETTE COUNTY

| | |
|---|---|
| ENVIRONMENTAL SALES AND SERVICE, INC., ) ) ) | |
| Plaintiff, ) | Civil No. 8231 |
| v. ) ) | |
| KATCH KAN USA, LLC, KATCH KAN ) HOLDINGS USA, INC. ) ) | COMPLAINT |
| Defendants. ) ) | |

Plaintiff Environmental Sales and Service, Inc., through its President Roland "Shorty" Shelton, by and through counsel, Mel C. Orchard, III and Tyson E. Logan of The Spence Law Firm, LLC, for his causes of action against defendants Katch Kan USA, LLC, and Katch Kan Holdings USA, Inc., states and alleges as follows:

## I. PARTIES AND AGENTS

1. Plaintiff Environmental Sales and Service, Inc., ("ES&S") at all times relevant herein, is a corporation organized and incorporated under the laws of Wyoming, and at all material times relevant to this Complaint, maintained its principal place of business in Pinedale, Wyoming.

2. Defendant Katch Kan USA, LLC, at all times relevant herein, is a corporation organized and incorporated under the laws of Texas, and at all material times relevant to this Complaint, conducted business in Pinedale, Wyoming.

3. This Complaint is brought against defendant Katch Kan USA, LLC for its employees' and agents' negligent and wrongful acts and omissions while acting within the scope of their employment with defendant.

4. Defendant Katch Kan USA, LLC maintains a registered agent in Texas.

5. Defendant Katch Kan USA, LLC's registered agent in Texas is Mark Fischer, 18838 Rabon Chapel Road, Montgomery, Texas 77316.

6. Defendant Katch Kan USA, LLC lists its principal place of business at 1092 Old Highway 105 W, Suite 102, Conroe, Texas 77304.

7. As a limited liability company, defendant Katch Kan USA, LLC acts through its officers, agents and employees. Any act or omission of an officer, agent or employee, made while acting in the scope of authority delegated by Katch Kan USA, LLC, or within the scope of duties of the employee, is an act of Katch Kan USA, LLC.

2

8.  Mark Fischer is Executive Vice President and a Member of Katch Kan USA, LLC, and upon information and belief, Quinn Holtby is President and a Member of Katch Kan USA, LLC. Any act or omission of Mark Fischer or Quinn Holtby, made while acting in the scope of authority delegated by Katch Kan USA, LLC, is an act of Katch Kan USA, LLC.

9.  Defendant Katch Kan Holdings USA, Inc., at all times relevant herein, is a corporation organized and incorporated under the laws of Texas, and at all material times relevant to this Complaint, conducted business in Pinedale, Wyoming.

10. This Complaint is brought against defendant Katch Kan Holdings USA, Inc. for its employees' and agents' negligent and wrongful acts and omissions while acting within the scope of their employment with defendant.

11. Defendant Katch Kan Holdings USA, Inc. maintains a registered agent in Texas.

12. Defendant Katch Kan Holdings USA, Inc.'s registered agent in Texas is Doug McCullough, 1300 W. Sam Houston Parkway, South, Suite 340, Houston, Texas 77316.

13. Defendant Katch Kan Holdings USA, Inc. lists its principal place of business at 1300 W. Sam Houston Parkway, South, Suite 340, Houston, Texas 77316.

14. As a corporation, defendant Katch Kan Holdings USA, Inc. acts through its officers, agents and employees. Any act or omission of an officer, agent or employee, made while acting in the scope of authority delegated by Katch Kan Holdings USA, Inc., or within the scope of duties of the employee, is an act of Katch Kan USA, LLC.

15. Quinn Holtby is Director of Katch Kan Holdings USA, Inc. Any act or omission of Quinn Holtby, made while acting in the scope of authority delegated by Katch Kan Holdings USA, Inc., is an act of Katch Kan Holdings USA, Inc.

## II. JURISDICTION AND VENUE

16. The incidents that form the majority of this action occurred in Sublette County, Wyoming, and therefore, the Court has personal jurisdiction over the defendants.

17. Venue is proper in Sublette County pursuant to Wyoming Statutes Annotated section 1-5-108.

18. The amount in controversy herein exceeds the amount required for filing in the District Courts of Wyoming.

## III. FACTUAL BASIS FOR CLAIMS

19. Dated effective August 20, 2007, Katch Kan USA, LLC, a corporation incorporated pursuant to the laws of the state of Texas, called "Katch Kan" throughout the Agreement, contracted pursuant to a 28-page (plus attached Schedules A through L) "Dealership Agreement ("Agreement")" with Environmental Sales and Services, Inc., a corporation incorporated pursuant to the laws of the state of Wyoming, called the "Distributor" throughout the Agreement, for its Exclusive operation in the contracted for Territory. Exhibit 1, Agreement attached hereto and filed under seal without attached Schedules.

20. ES&S is a private contractor and not an employee of Katch Kan USA, LLC or Katch Kan Holdings USA, LLC, but was a Dealer under the Agreement.

Territory, which would have been more than $6 million.

26. Quinn Holtby requested that Shorty send him all the sales-related materials that Shorty had sent to Mountain Supply because Katch Kan possibly wanted to purchase the area, but after Katch Kan received all the information that Quinn Holtby had requested, it asked for more information trying to find causes for breaches. ES&S complied with these requests.

27. Shorty emailed Quinn Holtby on April 27, 2012 about the sale proposal he had sent previously, but had not heard back anything.

28. On May 1, 2012, Sadie Stevenson Trebell (Quinn Holtby's legal assistant) sent Shorty an email apologizing for the delay and that their lawyer and controller were looking into the matter and that "Quinn is out of town for the next week so will not be in a position to give you a decision until the lawyer and controller give him their opinion. As you stated, no transaction can be done unless Quinn sanctions them. Mountain Supply is aware of this as well."

29. On May 1, 2012, Sadie Stevenson Trebell sent Shorty an email requesting ES&S financials for Katch Kan's accountant to review.

30. Shorty responded to the May 1, 2012 email on May 1, 2012 by stating his reasons for not providing the requested additional materials.

31. Shorty had sent a prior email to Quinn Holtby regarding the sale of his business on May 31, 2012, to which his assistant responded and advised that she would be sending a letter then next week regarding the decision on the sale.

32. A July 25, 2012 letter from Quinn Holtby, entitled "Distribution Agreement – Notice of Default/Notice to Cease and Desist set forth Katch Kan's reasons why it believed that ES&S was not in compliance with the Distribution/Dealership Agreement. The last paragraph

gave ES&S 14 days to cure the breaches noticed in the letter or "Katch Kan USA will be terminating the Dealership Agreement."

33. Shorty initially responded via email to Quinn Holtby on July 30, 2012. He then sent the materials requested in the Notice of Default letter via FedEx on August 9, 2012.

34. ES&S sent Quinn Holtby a letter on August 7, 2012 responding to the July 25, 2012 letter about the indemnity claim.

35. ES&S responded on December 5, 2012 to a November 29, 2012 letter from Quinn Holtby (responsive to Shorty's lawyer's August 7, 2012 letter) and asked for more time to produce documents and alerted Holtby to the disgruntled employee that hindered document production.

36. On December 13, 2012, Sadie Stevenson Trebell sent ES&S an email allowing an extension of time to February 1, 2013 within which to produce the requested documents.

37. ES&S emailed Quinn's legal assistant Sadie Stevenson Trebell on December 17, 2012 and agreed to send the information when it became available.

38. ES&S emailed Quinn Holtby on December 5, 2012 informing him of ES&S's problems with an employee who mishandled company records and requested an extension to March 1, 2013 to submit the requested documentation.

39. ES&S sent Sadie Stevenson Trebell a letter on January 28, 2013 stating that ES&S had still not been able to develop the records requested.

40. ES&S sent Sadie Stevenson Trebell a letter on February 8, 2013 forwarding the requested criminal information.

7

41. ES&S sent Sadie Stevenson Trebell a letter on February 28, 2013 stating that ES&S had still not received the computer taken from ES&S, which contained the records.

42. ES&S emailed Quinn's legal assistant Sadie Stevenson Trebell on March 27, 2013 about a former ES&S employee causing "an enormous problem with their accounting books and records, who has been criminally charged and is awaiting legal process" and that the company was re-creating the records to provide as requested.

43. Anthony Grizzle, an ES&S employee signed a statement dated May 25, 2013 describing his experience/conversation with a Katch Kan representative from Canada named Stewart Britton involving employment security after Shorty had left the business. Bernie Wackerman signed a similar statement also dated May 25, 2013.

44. A June 10, 2013 letter from Quinn Holtby entitled "Distribution Agreement" advised ES&S "we are unable to offer you an extension on the current Distribution Agreement." The letter did offer "a conditional one year Non-exclusive Distribution Agreement for the States of North Dakota and Wyoming. All other States previously assigned to you (Colorado, Utah, Montana, Washington, Oregon, Nevada, Nebraska, Western Kansas, Northern New Mexico) will revert back to Katch Kan Limited. It is worth noting that you will not be losing Territory, Katch Kan Western USA, Ltd. will be [sic] now be managing Territory that you have not utilized." The letter required a response from Shorty by July 1, 2013.

45. The new (and never signed by Shorty) 2013 Distribution and Sublicense Agreement (27 page) materially differed from the original, signed Dealership agreement.

8

54. Shorty responded to the September 12, 2013 letter/email the same day stating that his attorney was out of town and noting that he could not meet the extremely short (by September 14, 2013) deadline by which to respond.

55. Shorty responded at length on September 21, 2013 to the no breaches noted in the September 12, 2013 letter and in which Shorty rejected the 2013 Non-Exclusive Distribution Agreement.

56. Shorty sent a letter via FedEx regarding his non-acceptance of the non-exclusive offer on October 4, 2013. He followed up with an email on October 11, 2013 asking for guidance because he had heard nothing from Katch Kan USA, LLC.

57. October 3 through October 17, 2013, Shorty's lawyer had numerous email communications with Texas counsel Nathan Graham and Van Graham regarding definition of "Dealer", statutes of limitations, and the non-compete clause.

58. October 17 through November 6, 2013 (with an October 21, 2013 letter memorializing discussions) Shorty communicated with Jacque Goodwin and Sadie Stevenson Trebell of Katch Kan USA, LLC regarding transition of ES&S Katch Kan products and rentals and exit as a Katch Kan distributor and wind up and inventory matters and invoice matters with Theresa Jones, Controller, Katch Kan USA, LLC.

59. Katch Kan USA, LLC's lawyer conveyed to Shorty's lawyer that it believed Shorty made charges to his customers unauthorized under the Agreement; however, these charges were clearly set forth in the materials provided to Quinn Holtby in April 2012 and reviewed by their lawyers and auditors.

60. Katch Kan USA, LLC's lawyer sent ES&S a letter on March 3, 2013 demanding a renewed inventory audit and alleged unauthorized daily rental rates that could constitute fraud on Shorty's part, reminding them of the arbitration clause, and further requesting records preservation and retention. A follow up letter alerted Shorty that ES&S equipment was off of all rigs and that he was to pick it up and forward his inventory list.

61. ES&S completed the full inventory, which Katch Kan's Bob Jones received and signed off on.

62. Defendants have not returned all of ES&S's equipment and have not paid for it.

## IV. CLAIM ONE
### BREACH OF CONTRACT

63. Plaintiff incorporates the allegations set forth below as if fully set forth herein.

64. The August 20, 2007 Agreement, in section 6.2(d), imposed an obligation on Katch Kan USA, LLC to "not grant any other Person any right to sell and distribute the Products in the Territory, including any new products, subject to the provisions of Paragraph 4.7 a) and (d) of this Agreement."

65. The August 20, 2007 Agreement, in section 6.2(e), imposed an obligation on Katch Kan USA, LLC to "not distribute the Products by means of any transaction itself, whether directly or indirectly, including any new products, subject to the provisions of Paragraph 4.7 a) and (d) of this Agreement."

66. The August 20, 2007 Agreement, in section 14.7 stated "The Dealer may not assign this Agreement without the prior written consent of Katch Kan USA, which consent will

not be unreasonably withheld. Katch Kan USA may assign this Agreement without the Dealer's consent as part of any transaction in which Katch Kan USA is selling or otherwise disposing of its manufacturing business and in which the assignee covenants to perform Katch Kan USA obligations under this Agreement."

67. ES&S sought prior written consent to the sale of part of its exclusive Territory.

68. Defendants, in breach of the Agreement, unreasonably withheld consent to the proposed sale presented by ES&S.

69. As a result of defendants' breach of their duty of good faith and fair dealing Plaintiff has been damaged as more particularly set out in the portion of this Complaint titled "Damages."

## V. CLAIM TWO
### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

70. Plaintiff incorporates the allegations set forth below as if fully set forth herein.

71. The implied-in-fact contract between Plaintiff and defendants was accompanied by a duty of good faith and fair dealing, in part because of the special relationship that had been created between Plaintiff and defendants.

72. Shorty and ES&S met the duty of good faith by performing in good faith the obligations accompanying the Agreement, namely: building the business in his exclusive Territories, servicing that business, and seeking prior written approval to the sale of part of the exclusive Territory.

73. Defendants breached their duty of good faith and fair dealing by violating and/or nullifying their obligation to authorize the sale and by otherwise significantly impairing ES&S's rights under the Agreement.

74. Defendants continued to communicate with ES&S about the sale's approval, while silently scheming not to approve the sale and to convert the exclusive Territory Dealer Agreement to a non-exclusive Distributor Agreement.

75. In an effort to try and avoid its obligation to approve ES&S's sale of a portion of its exclusive Territory, defendants created new requirements not part of the existing Agreement.

76. These requirements were created after ES&S had already presented the offer of sale.

77. These policies were not communicated to ES&S at any time until after it inquired about the delay in the sale approval process.

78. By actively leading Shorty and ES&S on about a pending sale approval, while at the same time quietly planning to avoid granting the approval owed under the Agreement, defendants breached their duty of good faith and fair dealing by interfering or failing to cooperate in ES&S's performance.

79. As a result of defendants' breach of their duty of good faith and fair dealing Plaintiff has been damaged as more particularly set out in the portion of this Complaint titled "Damages."

## VI. CLAIM THREE
### BREACH OF IMPLIED–IN-FACT CONTRACT

80. Plaintiff incorporates the allegations previously set forth.

81. Defendants' further use of ES&S's equipment inventory and goodwill of ES&S's customer base, after issuing its Termination Letter and/or Cease and Desist notice to ES&S amounted to an implied-in fact-contract.

82. Defendants have not compensated ES&S for its equipment inventory or servicing efforts.

83. ES&S reasonably responded to the defendants' use of ES&S's equipment inventory and good will of ES&S's customer base by maintaining positive customer relations through its servicing efforts while also attempting to preserve its assets.

84. All parties were competent to enter into a binding contract.

85. The purpose of the contract was lawful.

86. ES&S provided valuable consideration through its services in exchange for the implied promise that it would be paid and its inventory would be purchased.

87. The circumstances set forth herein imply a promise by the defendants to pay ES&S for its equipment inventory and good will of ES&S's customer base by maintaining positive customer relations through its servicing efforts.

88. Defendants accepted ES&S's equipment inventory and good will of ES&S's customer base by maintaining positive customer relations through its servicing efforts.

89. Defendants' acceptance inferred or implied a promise to pay for ES&S's equipment inventory and services.

90. ES&S's equipment inventory and good will of ES&S's customer base by maintaining positive customer relations through its servicing efforts was valuable to defendants in the vacuum they created in not approving the proposed sale of part of ES&S's exclusive Territory.

91. Defendants did, in fact, use ES&S's equipment inventory and good will of ES&S's customer base by maintaining positive customer relations through its servicing efforts.

92. In using ES&S's equipment and efforts, defendants incurred an obligation to pay for these.

93. Defendants have not paid ES&S any payment for its equipment inventory or efforts to maintain good customer relations.

94. In failing to pay ES&S, defendants have breached the implied-in-fact contract with ES&S.

95. As a result of the breach of the implied-in-fact contract between plaintiff and defendants, ES&S has been damaged as more particularly set out in the portion of this Complaint titled "Damages."

## VII. CLAIM FOUR
### BREACH OF FIDUCIARY DUTY

96. Plaintiff incorporates the allegations previously set forth.

97. Due to the exclusive Territory relationship described above, coupled with a corporate culture that emphasized and promoted the concept of exclusive Territories, ES&S enjoyed a relationship of trust and confidence with defendants.

98. In addition, through its employees, defendants led ES&S to reasonably believe that defendants were protecting ES&S's rights under the Agreement and acting in ES&S's best interests in promoting and protecting the business interests of both parties.

99. Defendants owed ES&S a fiduciary duty.

100. ES&S entrusted defendants with its business interests and in receiving approval for the sale of part of its exclusive Territory.

101. Defendants breached their fiduciary duty by taking Plaintiff's rights under the Agreement without compensating Plaintiff.

102. Defendants delayed and impeded ES&S's sale while silently scheming to keep the exclusive Territory for itself or to sell it itself, outside the Agreement's requirements.

103. In an effort to try and avoid its obligation to authorize ES&S's sale, defendants, created new audit policies to defeat ES&S's interests and potential sale.

104. These policies were created after ES&S had already presented the proposed sale to defendants.

105. These policies were not communicated to ES&S at any time until after it had presented the proposed sale to defendants.

106. By actively encouraging ES&S to sell, while at the same time quietly planning to avoid authorization for the sale or any payment, defendants breached their fiduciary duty to ES&S.

107. As a result of defendants' breach of its fiduciary duties Plaintiff has been damaged as more particularly set out in the portion of this Complaint titled "Damages."

### VIII. CLAIM FIVE
#### UNJUST ENRICHMENT

108. Plaintiff incorporates the allegations previously set forth.

109. Defendants were unjustly enriched because they received Plaintiff's inventories, services, and customer goodwill without compensating ES&S.

110. ES&S's contacts and customer relations conferred a benefit on the defendants that allowed them to: increase its market base, access ES&S's exclusive Territory and market, increase sales, and increase profit to the company and increase business opportunities.

111. The defendants have appreciated and enjoyed the benefit conferred.

112. The defendants have accepted the benefits conferred by Plaintiff.

113. Defendants used ES&S's inventory, without compensating it, after it was made aware of its expectation of compensation.

114. The circumstances described herein are such that would be inequitable for the defendants to retain the benefit without payment to the Plaintiff for the value thereof.

115. ES&S has been damaged by defendants' failure and refusal to pay the Plaintiff for the reasonable value of the benefits conferred.

116. As a result of defendants' unjust enrichment, Plaintiff has been damaged as more particularly set out in the portion of this Complaint titled "Damages."

## IX. CLAIM SIX
### TORTIOUS INTERFERENCE WITH CONTRACT OR PROSPECTIVE BUSINESS ADVANTAGE

117. Plaintiff incorporates the allegations previously set forth.

118. Plaintiff had a valid contractual relationship or business expectancy with Mountain Supply out of Texas and meeting of the minds or agreement on the terms of the future contract, pending approval per the Dealer Agreement.

119. Defendants had knowledge of this relationship or expectancy because ES&S requested Katch Kan USA, LLC's approval of the sale.

120. Defendants intentionally and improperly interfered with the sale inducing or causing a breach or termination of the relationship or expectancy.

121. As a result of defendants' tortious interference with its contract or prospective business advantage whose relationship or expectancy has been disrupted, Plaintiff has been damaged as more particularly set out in the portion of this Complaint titled "Damages."

## X. CLAIM SEVEN
### NEGLIGENT MISREPRESENTATION

122. Plaintiff incorporates the allegations previously set forth.

123. Defendants, in the course of their business with ES&S, and in the sales transaction presented in which they had a pecuniary interest, supplied false information in their business transactions in unreasonably and falsely withholding approval of the sale based on false grounds.

124. Defendants are subject to liability for pecuniary loss caused to ES&S by their justifiable reliance upon the information in the Agreement stating that approval would not be unreasonably withheld, because defendants failed to exercise reasonable care or competence in communicating the information.

125. As a result of defendants' negligent misrepresentation, Plaintiff has been damaged as more particularly set out in the portion of this Complaint titled "Damages."

## XI.   DAMAGES

126. Plaintiff incorporates the allegations set forth below as if fully set forth herein.

127. The acts and omissions of the defendants as relayed herein amount to an extreme deviation from reasonable standards of conduct.

128. The acts and omissions of the defendants as relayed herein were malicious, oppressive and outrageous.

129. As a direct and proximate result of the defendants' acts and omissions as set forth in this Complaint, the Plaintiff ES&S was damaged. Plaintiff is seeking all damages allowable under law for the acts set forth herein. Such damages may include, but are not necessarily limited to the following:

   a.  Disgorgement of all profits under the Agreement, past and future, derived from the sale of Katch Kan products in ES&S's exclusive Dealer Territory;

   b.  Damages for breach of contract, including actual, incidental and consequential damages;

c. Damages for breach of the duty of good faith and fair dealing, including actual, incidental and consequential damages;

d. Damages for breach of implied contract, including actual, incidental and consequential damages;

e. Damages for breach of fiduciary duty, including actual, incidental and consequential damages;

f. Damages for unjust enrichment, including the value of both the direct and indirect benefits bestowed upon defendants by the Plaintiff;

g. Damages for tortious interference with contract or prospective business advantage, including the actual, incidental and consequential damages;

h. Damages for negligent misrepresentation, including actual, incidental and consequential damages;

i. Prejudgment interest;

j. Punitive damages in an amount to be proven at trial;

k. Reasonable attorneys fees;

l. Post judgment interest as allowed by law;

m. Costs of this action; and

n. Further damages the Court determines equitable and just.

WHEREFORE, Plaintiff requests that this Court grant judgment as follows:

A. Judgment for the Plaintiff and against the defendants;

B. Judgment for the Plaintiff for general damages in an amount to be proven at trial;

C. Judgment for the Plaintiff for special damages in an amount to be proven at trial;

D. Judgment for attorney's fees, costs and such other relief as the Court deems equitable and proper.

DATED THIS 8th day of May, 2014.

*[signature]*

Mel C. Orchard, III
Tyson E. Logan
THE SPENCE LAW FIRM, LLC
15 South Jackson Street
P.O. Box 548
Jackson, WY 83001
307-733-7290 (p)
307-733-5248 (f)

ATTORNEYS FOR PLAINTIFF